# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL CASUALTY COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:20-cv-699 ) |
| HENRY A. SOLOMON and THE ATLANTA CHANNEL COMPANY, INC., | ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, NATIONAL CASUALTY COMPANY ("National Casualty"), by and through its attorneys, brings this Complaint for Declaratory Judgment against Defendants, HENRY A. SOLOMON ("Solomon") and THE ATLANTA CHANNEL COMPANY, INC. ("Atlanta Channel"), and alleges and states as follows:

## STATEMENT OF THE CASE

1. National Casualty brings this insurance coverage action to obtain a declaratory judgment finding that it has no duty to defend or indemnify Solomon under a "Lawyers Professional Liability Insurance Claims Made and Reported Policy" with respect to an action currently pending in this District Court, captioned *The Atlanta Channel, Inc. v. Henry A. Solomon, et al.*, Case No. 1:15-cv-01823-RC, filed on October 26, 2015 (the "Underlying Lawsuit").

## PARTIES, JURISDICTION AND VENUE

2. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) and the amount in controversy exceeds $75,000.

3. Plaintiff National Casualty is a Wisconsin corporation with its principal place of business in Scottsdale, Arizona and is licensed to do business in the District of Columbia.

4. At all times relevant to this declaratory judgment action and the Underlying Lawsuit, Defendant Solomon has been an individual and a resident of the District of Columbia.

5. At all times relevant to this declaratory judgment action and the Underlying Lawsuit, Defendant Atlanta Channel has been a Florida corporation with its principal place of business in Georgia.

6. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff National Casualty and Defendants Solomon and Atlanta Channel and (b) the amount in controversy, inclusive of the continuing cost of defending Solomon and the potential cost of indemnifying Solomon with respect to the Underlying Lawsuit, exceeds $75,000.

7. Venue is appropriate under 28 U.S.C. § 1391(b) because National Casualty's insured, Solomon, resides in this District, the Underlying Action is venued in this District, and National Casualty's defense and indemnity obligations, if any, must be paid in this District.

8. Defendant Atlanta Channel filed the Underlying Action in this District.

9. Defendant Solomon did not object to Defendant Atlanta Channel's filing of the Underlying Action in this District.

10. An actual justiciable controversy exists between Plaintiff National Casualty and Defendants Solomon and Atlanta Channel, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## THE POLICY

11. National Casualty issued to Solomon a "Lawyers Professional Liability Insurance Claims Made and Reported Policy," No. LPO-0011 833, which is a renewal of #LPO-0010 276,

with a policy period of June 1, 1999 to June 1, 2000 (the "Policy"). The Policy includes an endorsement for a "Supplemental Extended Reporting Period" policy period of June 1, 2000 to "No Expiration". A true and correct copy of the Policy is marked as **Exhibit A**.

12. The Policy, in part, subject to its terms, provisions, conditions, and exclusions, provides as follows as amended by the FIRST DOLLAR DEFENSE AND CLAIM EXPENSE IN ADDITION TO LIMITS OF LIABILITY Endorsement:

> **WE** will pay on **YOUR** behalf all sums which **YOU** become legally obligated to pay as **DAMAGES** as a result of **CLAIMS** first made against **YOU** and reported to **US** in writing during the **POLICY YEAR** or Extended Reporting Period, if applicable, provided that:
>
> 1. the **WRONGFUL ACT** giving rise to the **CLAIM** occurred on or after the **PRIOR ACTS DATE** shown in Item 3. of the Declarations; and
>
> 2. notice of the **WRONGFUL ACT** was not given nor required to be given to any prior insurer; and
>
> 3. prior to the inception date of the first policy issued to **YOU** by **US** and continuously renewed by **US**, **YOU** had no reasonable basis to believe that such **WRONGFUL ACT** had been committed or that a **CLAIM** would be made against **YOU** alleging such **WRONGFUL ACT**.
>
> **B. DEFENSE**
>
> **WE** have the right and duty to defend any suit against **YOU** seeking **DAMAGES** because of a **WRONGFUL ACT** even if any of the allegations in the suit are groundless, false or fraudulent. **WE** have the right to appoint counsel and investigate any **CLAIM** or suit. However, **WE** will not settle or compromise a **CLAIM** or suit without **YOUR** written consent. If consent is refused and YOU elect to contest the **CLAIM** or continue legal proceedings, then **OUR** liability for the **CLAIM** will not exceed the amount for which the **CLAIM** could have been settled, plus **CLAIM EXPENSE** incurred up to the date of **YOUR** refusal.
>
> If the allegation(s) is excluded under this policy, there shall be no duty to defend such **CLAIM**.
>
> **WE** are not obligated to pay any **DAMAGES** or **CLAIM EXPENSE** or defend any suit after the applicable limits of **OUR** liability have been exhausted by payment of **DAMAGES** or **CLAIM EXPENSE**.

**WE** have the right, but no duty, to appeal any judgment.

**YOU**, except at **YOUR** own cost and for **YOUR** own account, will not:

1. make any payment;

2. admit any liability;

3. settle any **CLAIM**;

4. assume any obligation; or

5. incur any expense

without **OUR** written consent.

*   *   *

**E. DEFINITIONS**

Whenever used in this policy, the following words have these meanings:

1. **CLAIM(S)** – means an oral or written notice from any party that it is their intention to hold **YOU** responsible for any **WRONGFUL ACT** in performing legal, arbitration, mediation, title agent or notary services. **CLAIM** also means **YOUR** knowledge of circumstances which could reasonably be expected to give rise to such notice; provided **YOU** tell us in writing of such circumstances during the **POLICY YEAR**. Notice includes, but is not limited to, service of suit or institution of arbitration proceedings.

2. **CLAIM EXPENSE**—means expenditures including, but not limited to:
    a. legal services charged by a lawyer(s) WE designate;
    b. costs of investigations;
    c. experts;
    d. court costs; and
    e. other similar expenses **WE** incur in the investigation, adjustment, defense or appeal of a **CLAIM** or suit.

    **CLAIM EXPENSE** does not include salary charges or expenses of **OUR** regular employees.

3. **DAMAGES**—means a monetary judgment, award or settlement.

*   *   *

9. **POLICY YEAR**—means the period of one year following the effective date and hour of this     policy or, if the time between the effective date and the termination of the policy is less than one year, such lesser period.

* * *

15.  **WRONGFUL ACT(S)**—means any actual or alleged negligent act, error, omission or **PERSONAL INJURY YOU** or any person or entity for whom **YOU** are legally responsible commit, but only in the performance of legal, arbitration, mediation, title agent or notary services for or on behalf of the **NAMED INSURED** or any **PREDECESSOR FIRM(S)**, or while participating as a member, director or officer of a professional bar association. This also includes services rendered by YOU in an attorney-client relationship as a trustee, administrator, conservator, executor, guardian, receiver or similar fiduciary capacity.

* * *

The Policy is amended by the **FIRST DOLLAR DEFENSE AND CLAIM EXPENSE IN ADDITION TO LIMITS OF LIABILITY** Endorsement, which provides, in part, that an Insured is responsible for contributing a $25,000 annual aggregate **RETENTION**. The Endorsement defines **RETENTION** as:

> II. Section **E. DEFINITIONS**, **4. DEDUCTIBLE**, of the policy is deleted its entirety and replaced by the following:
>
>> **4. RETENTION**—means the amount **YOU** must contribute to **DAMAGES**. The **RETENTION** will not apply to **CLAIM EXPENSE**.
>
> III. The term **RETENTION** replaces the term **DEDUCTIBLE** wherever found in this policy.

* * *

The Endorsement additionally modifies the Policy's Section **H. LIMITS of LIABILITY** as follows:

> VIII. Section **H. LIMITS OF LIABILITY** is deleted in its entirety and is replaced by the following:
>
> **H.  LIMITS OF LIABILITY**
>
>> Regardless of:
>>
>> a.      the number of **YOU** who are insured under the policy;

      b.    all persons or organizations who sustain **DAMAGES** payable under this policy; and/or

      c.    suits brought on account of coverage afforded by the policy.

**OUR** liability is limited as follows:

1. The Limit of Liability stated in Item 4. (A) of the Declarations page is the limit of **OUR** liability for all **DAMAGES** arising out of each **CLAIM** first made and reported in writing during the **POLICY YEAR** or Extended Reporting Period.

2. The Limit of Liability stated in Item 4. (B) of the Declarations page is subject to the above provisions respecting **EACH CLAIM** and is the maximum limit of **OUR** liability for all **DAMAGES** for each **POLICY YEAR**. In no event will **OUR** total Limit of Liability be increased for any Extended Reporting Period.

       \*   \*   \*

3. **WE** will be liable to pay **CLAIM EXPENSE** on **YOUR** behalf; and **OUR** obligation to pay **DAMAGES** on **YOUR** behalf shall apply in excess of the **RETENTION** (as stated in this endorsement) and **YOU** agree not to reinsure the **RETENTION** without **OUR** knowledge and permission. The **RETENTION** will not apply to **CLAIM EXPENSE**. **YOUR RETENTION** for all **DAMAGES** in any **POLICY YEAR** is the Annual Aggregate amount shown above in **Item 5. RETENTION**.

4. One or more **CLAIMS** based on or arising out of the same **WRONGFUL ACT(S)** or a series of related **WRONGFUL ACT(S)** of **YOU** will be considered a single **CLAIM**. The **CLAIM** will be subject to the Limit of Liability in effect at the time such **CLAIM** was first reported in writing to **US**. Only one **RETENTION** will apply to such **CLAIM**.

       \*   \*   \*

## J. INSURED'S DUTIES IN THE EVENT OF CLAIM OR SUIT

1. In the event of a **CLAIM**, the **NAMED INSURED** must give **US**, as soon as practicable, written notice of:

    a.    the specific **WRONGFUL ACT**; and

<ol type="a" start="2">
<li>the injury or damage which has or may result from the **WRONGFUL ACT**; and</li>
<li>the names and addresses of the claimants or potential claimants; and</li>
<li>the circumstances by which **YOU** first became aware of such **WRONGFUL ACT**.</li>
</ol>

2. If **CLAIM** is made or suit is brought against **YOU**, **YOU** will immediately forward to US every demand, notice, summons or other process received by **YOU** or **YOUR** representative.

3. **WE** will have full discretion in the handling of any **CLAIM**, and **YOU** will give full information and assistance as **WE** may reasonably require. **YOU** will cooperate with **US** and, at **OUR** request, consent to being examined and questioned by **OUR** representative, under oath, if necessary. At **OUR** request, **YOU** will attend hearings, depositions and trials and assist in effecting settlement, securing and giving evidence, and obtaining the attendance of witnesses. **YOU** will cooperate in the conduct of suits as well as in giving written statements to **OUR** representatives and defense counsel.

\* \* \*

*See* Exhibit A.

## THE UNDERLYING LAWSUIT

13. A Second Amended Complaint was filed in the Underlying Lawsuit on June 11, 2017. The Second Amended Complaint seeks to hold Solomon liable for filing an allegedly defective ACI Statement. A true and correct copy of the Second Amended Complaint is marked as **Exhibit B**.

14. The Second Amended Complaint alleges that Solomon filed the ACI Statement on or about December 29, 1999 and the FCC dismissed the ACI Statement on June 9, 2000.

15. Discovery conducted in the Underlying Lawsuit has revealed Solomon's awareness of one or more **WRONGFUL ACTS** [as defined by the Policy—*see* Exhibit A], which Solomon contemporaneously reported to ACI, but not to National Casualty. Thereafter, Solomon engaged

in multiple filings in an effort to address the allegedly defective ACI Statement including a Petition for Reconsideration filed on June 22, 2000 and an Application for Review on December 20, 2000.

16. Further, with Solomon's knowledge, a Petition for Reconsideration was filed on December 7, 2012. National Casualty, however, was not notified of any circumstances relating to the allegedly defective ACI Statement until November 2012. This delay of more than 12 years after the FCC's initial ruling on June 9, 2000, dismissing the ACI Statement, was substantially untimely and violates the following Policy provision:

> **I. NOTIFICATION**
>
> 1. If during the **POLICY YEAR** or the Extended Reporting Period:
>
>     a. **YOU** receive written or oral notice from any party that it is the intention of such party to hold **YOU** responsible for any **WRONGFUL ACT(S)**; or
>
>     b. **YOU** become aware of circumstances which could reasonably be expected to give rise to such notice,
>
>     then:
>
>     **YOU** will tell us in writing as soon as practicable, but no later than the end of the **POLICY YEAR** or Extended Reporting Period.
>
> \*     \*     \*

*See* Exhibit A.

17. Based on the circumstances alleged in the Second Amended Complaint (*see* Exhibit B), Solomon was obligated to inform National Casualty of circumstances that could give rise to a claim against him in June 2000 after the FCC dismissed the ACI Statement. National Casualty received no notice of the circumstances of this matter until late 2012.

18. National Casualty is funding Solomon's defense for the Underlying Lawsuit.

19. National Casualty has fulfilled all of its obligations under the Policy owed to Solomon to date.

## **COUNT I – NATIONAL CASUALTY HAS NO DUTY TO DEFEND OR INDEMNIFY SOLOMON**

20. National Casualty incorporates by reference paragraphs 1-19 above as if fully stated herein as Paragraph 21.

21. With respect to the Underlying Lawsuit, National Casualty has no duty to defend and no duty to indemnify Solomon because he did not notify National Casualty of the circumstances surrounding his claim as soon as practicable and his failure to do so breached his notice obligations under the Policy.

22. With respect to the Underlying Lawsuit, National Casualty has no duty to defend and no duty to indemnify Solomon because Solomon's failure to notify National Casualty of the circumstances surrounding his claim as soon as practicable breached his notice obligations under the Policy.

## **COUNT II – GREAT AMERICAN HAS NO DUTY INDEMNIFY ATLANTA CHANNEL**

23. National Casualty incorporates by reference paragraphs 1-22 above as if fully stated herein.

24. Atlanta Channel is a necessary and indispensable party to this declaratory judgment action because it may in the future, following the completion of all trial and post-trial proceedings in its favor, become a judgment creditor with respect to any verdict and corresponding final judgment entered against Solomon with respect to the Underlying Lawsuit.

25. No money is available from the Policy to satisfy any final judgment in favor of Atlanta Channel arising out of the Underlying Lawsuit because no coverage under the Policy exists.

WHEREFORE, Plaintiff National Casualty respectfully requests this Court enter a declaratory judgment in its favor and against Defendants Solomon and Atlanta Channel, declaring, adjudging, and decreeing as follows:

A. That Plaintiff National Casualty has no duty to defend Defendant Solomon with respect to the Underlying Lawsuit

B. That Plaintiff National Casualty has no duty to indemnify Defendant Solomon with respect to the Underlying Lawsuit;

C. That Plaintiff National Casualty has no obligation to indemnify Defendant Atlanta Channel for any future final judgment awarded in favor of Defendant Atlanta Channel arising out of the Underlying Lawsuit; and

D. That Plaintiff National Casualty is entitled to such other and further relief, as this Court deems appropriate.

DATED:  March 10, 2020

        Respectfully submitted,

        **GOLDBERG SEGALLA LLP**

        By: _/s/ Thomas P. Bernier_
        One of the Attorneys for Plaintiff National Casualty Company

Thomas P. Bernier, Esq.
**GOLDBERG SEGALLA LLP**
*Mailing Address:*
P.O. Box 677
Buffalo, NY 14201
*Physical Address:*
111 South Calvert Street, Suite 2000
Baltimore, MD  21202-6114
Tel: (443) 615-7502
Fax: (443) 615-7599
tbernier@goldbergsegalla.com

*Admission Application Approved/Swearing-In Ceremony Pending*:
Larry D. Mason, Esq.
**GOLDBERG SEGALLA LLP**
*Mailing Address:*
P.O. Box 957
Buffalo, NY 14201
*Physical Address:*
222 West Adams Street, Suite 2250
Chicago, IL  60606
Tel: (312) 572-8444
Fax: (312) 572-8401
lmason@goldbergsegalla.com


25750650.v1