UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| NATIONAL CASUALTY INSURANCE COMPANY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-699 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 9, 18, 20, 26, 30, 35, 37 |
| | : | | |
| HENRY A. SOLOMON, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |
| | : | | |
| Consolidated Cases: | : | | |
| ATLANTA CHANNEL, INC. v. SOLOMON, *et al.* | : | Civil Action No.: | 20-1768 (RC) |

### MEMORANDUM OPINION

GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING

PLAINTIFF'S MOTION TO DISMISS

### I.  INTRODUCTION

In this case, Plaintiff National Casualty Insurance Company ("National Casualty") seeks declaratory judgment against Defendants Henry A. Solomon and The Atlanta Channel Company, Inc. ("ACI") regarding a legal malpractice insurance policy. ACI filed a legal malpractice suit against Mr. Solomon (the "Underlying Lawsuit") alleging that, in December of 1999, he submitted a defective application for a special broadcasting license with the Federal Communications Commission ("FCC"). The Underlying Lawsuit remains pending in this Court and is scheduled for trial next year. Because Mr. Solomon asserts that he does not have the money to satisfy a judgment against him (ACI seeks millions of dollars in damages), an issue looms over the Underlying Lawsuit: who will pay if ACI wins? National Casualty provided Mr.

Solomon with legal malpractice insurance at the relevant time and has been covering his legal expenses for the duration of the Underlying Lawsuit. Through this action, however, National Casualty seeks a declaratory judgment finding that it has no duty to defend or indemnify Mr. Solomon because he failed to provide timely notice under the terms of the insurance contract. In response, ACI brings a counterclaim and argues that, under Virginia law, National Casualty will still have to pay any judgment issued against Mr. Solomon, notwithstanding any breach of the contract on his part.

ACI has moved for partial summary judgment on its counterclaim. *See* ACI's Mem. Supp. Mot. Partial Summ. J. ("ACI's Mem."), ECF No. 20-3.[1] National Casualty has moved to dismiss ACI's counterclaim. *See* Nat'l Casualty's Mot. Dismiss, ECF No. 30. Resolution of these motions depends on the same legal analysis. In addition, because ACI considers the arguments made in response to its motion frivolous, it has moved for sanctions against National Casualty. *See* ACI's Mem. Supp. Mot. Sanction ("Mot. Sanctions"), ECF No. 37-1. For the reasons stated below, the Court grants ACI's motion for partial summary judgment and denies National Casualty's motion to dismiss. Because the Court does not find sanctions are warranted for the reasons explained below, ACI's motion for sanctions is denied.[2]

---

[1] ACI also filed an amended motion for partial summary judgment that purports to withdraw one of the substantive arguments of the initial motion. *See* ACI's Am. Mot. Partial Summ. J., ECF No. 26. Also pending is ACI's motion for leave to file a surreply. *See* Mot. Leave to File, ECF No. 35. The Court finds that ACI's proposed surreply addresses matters raised for the first time in reply, and therefore, although surreplies are generally disfavored, *see Crummey v. Social Sec. Admin.*, 794 F. Supp. 2d 46, 62 (D.D.C. 2011), the Court grants ACI's motion for leave to file over National Casualty's objection, *see* Nat'l Casualty's Opp'n to ACI's Mot. Leave to File, ECF No. 36.

[2] Also pending before the Court is a motion to dismiss filed by Mr. Solomon, *see* Solomon Mot. Dismiss, ECF No. 9, and a motion to withdraw from ACI, *see* Mot. Withdraw, ECF No. 18. Because the parties acknowledge Mr. Solomon's motion is moot in their Rule 16(d) report, *see* Meet and Confer Statement at 1 n.1, ECF No. 41, the Court denies it. Because no party objects to ACI withdrawing its motion, the Court grants the motion to withdraw.

## II.  BACKGROUND

National Casualty issued to Mr. Solomon, through his law firm at the time Haley, Bader & Potts, P.L.C., a Lawyers Professional Liability Insurance Policy (the "Policy") that covered the firm from June 1999 to June 2000.  *See* Compl. Ex. A, ECF No. 1-1.  Haley, Bader & Potts, P.L.C. was based in Arlington, Virginia and the Policy included several specific references to Virginia.  *See id.* at 15, 16.  The Policy was issued in Virginia.  *See* ACI's Statement of Material Facts Not in Dispute ¶¶ 6–8 ("ACI's Statement of Facts"), ECF No. 20-1.

In December 1999, Mr. Solomon, acting on behalf of his client ACI, filed a Statement of Eligibility with the FCC to acquire a Class A License for its television station.  *See id.* ¶ 11.  In the Underlying Lawsuit, ACI seeks damages of at least $25,000,000 based on Mr. Solomon's alleged negligence in filing the form—he filed the Statement of Eligibility with several questions left blank, resulting in its rejection.  *See id.*; *see also* 2d Am. Compl. ¶¶ 28–29, 32, *The Atlanta Channel v. Solomon*, No. 15-cv-1823 (D.D.C. June 1, 2017), ECF No. 69.[3]  Mr. Solomon filed administrative appeals shortly after the initial rejection, but those remained pending for more than a decade.  *See* Compl. ¶¶ 15–16.  Mr. Solomon did not make National Casualty aware of the allegedly defective Statement of Eligibility until November of 2012.  *Id.* ¶ 16.

After receiving notice of the potential malpractice claim, National Casualty sent Mr. Solomon a series of reservation of rights letters.  *See* ACI's Statement of Fact Ex. B–D.  In each letter, National Casualty confirms that it will defend Mr. Solomon, but reserves certain rights to

---

[3] For a more detailed discussion of the factual background of the Underlying Lawsuit, see *Beach TV Props., Inc. v. Solomon*, 324 F. Supp. 3d 115, 118–121 (D.D.C. 2018) and *Beach TV Props., Inc. v. Solomon*, No. 15-cv-1823, 2016 WL 6068806, at *1–4 (D.D.C. Oct. 14, 2016).

3

challenge coverage. *See id.* Specifically, in the initial reservation of rights letter sent on December 23, 2015, National Casualty states:

> The FCC dismissed the ACI Statement on June 9, 2000. Thereafter, you engaged in multiple filings in an effort to address the allegedly defective ACI Statement including a Petition for Reconsideration filed on June 22, 2000 and an Application for Review on December 20, 2000 . . . National Casualty, however, was not notified of any circumstances relating to the allegedly defective ACI Statement until November 2012. This delay of more than 12 years after the FCC's initial ruling on June 9, 2000, dismissing the ACI Statement, was substantially untimely . . . Thus, you and the Haley Firm breached your notice obligations under the Policy.

*Id.* Ex. B at 5–6. National Casualty reiterates the position that Mr. Solomon breached the terms of the Policy by failing to provide timely notice in the other two reservation of rights letters sent on July 5, 2016 and October 10, 2019. *See id.* Ex. C–D. It is undisputed that ACI did not receive the first two reservation of rights letter until December 13, 2019, ACI's Statement of Facts ¶¶ 19, 22, and the last reservation of rights letter until November 27, 2019, *id.* ¶ 25. As such, ACI was not given notice of the reservation of rights letters within forty-five days of Mr. Solomon receiving them.

National Casualty filed this lawsuit seeking "a declaratory judgment finding that it has no duty to defend or indemnify [Mr.] Solomon" under the Policy. Compl. ¶ 1. The Complaint also asks for a judgment declaring that "National Casualty has no obligation to indemnify Defendant Atlanta Channel for any future final judgment awarded in favor of Defendant Atlanta Channel arising out of the Underlying Lawsuit." *Id.* at 10. ACI brought a counterclaim and cross claim requesting an order stating that "[a]ny judgment entered in the [Underlying Lawsuit] in favor of ACI against Mr. Solomon without the consent of Mr. Solomon is enforceable against National Casualty pursuant to Va. Code § 38.2-2200 notwithstanding any breach of the Policy by Mr. Solomon described in any Reservation of Rights Letter." ACI Ans. at 9, ECF No. 19.

4

ACI has moved for summary judgment on its counterclaim.  *See* ACI's Mem.  National Casualty has moved to dismiss the counterclaim.  *See* Nat'l Casualty's Mot. Dismiss.  In addition to these motions, ACI has filed a motion for sanctions against National Casualty.  *See* Mot. Sanctions.  The Court addresses the motion for partial summary judgment and motion to dismiss together first, then turns to the motion for sanctions.

### III.  MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO DISMISS

#### A.  Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.

Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.  However, a court considering a motion to dismiss presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

## B. Analysis

The parties' arguments shift significantly across the briefing papers.[4]  The Court identifies one primary issue that remains in dispute—whether Va. Code § 38.2-2226 should apply to this case brought in federal court.  The facts required to settle this issue are not in dispute; the parties have not identified any disputed facts relevant to this inquiry.

The Virginia law at issue states:

> Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured, the insurer shall notify the claimant or the claimant's counsel of the breach.  Notification shall be given within forty-five days after discovery by the insurer of the breach or of the claim, whichever is later.  Whenever, on account of such breach, a nonwaiver of rights agreement is executed by the insurer and the insured, or a reservation of rights letter is sent by the insurer to the insured, notice of such action shall be given to the claimant or the claimant's counsel within forty-five days after that agreement is executed or the letter is sent, or after notice of the claim is received, whichever is later.  Failure to give the notice within forty-five days will result in a waiver of the defense based on such breach to the extent of the claim by operation of law.

Va. Code § 38.2-2226.  The parties primarily disagree on whether this statute is substantive or procedural.  ACI argues that this statute applies to this case and that, because ACI was not provided timely notice of the reservation of rights letters, National Casualty has waived its defense based on Mr. Solomon's alleged breach of the insurance contract.  See ACI's Mem. at 4.  Mr. Solomon agrees.  See Solomon's Resp. to ACI's Mot. Partial Summ. J. at 2 ("Solomon's

---

[4] For example, in its amended motion for partial summary judgment, "ACI withdraws that branch of the [original motion] which sought a declaration that the Judgment shall include any judgment entered upon the consent of Mr. Solomon without the agreement or approval or National Casualty."  ACI's Am. Mot. Partial Summ. J. at 2.  In its motion to dismiss, National Casualty argues that application of the Virginia statutes would be unripe because there has not been a judgment entered against Mr. Solomon.  See Nat'l Casualty Mot. Dismiss at 5.  National Casualty abandons this argument in its opposition to ACI's amended motion for partial summary judgment.  See Nat'l Casualty Opp'n to ACI's Am. Mot. Partial Summ. J. ("Nat'l Casualty's Opp'n") at 3, ECF No. 33 ("National Casualty does now acknowledge this action is ripe under the Declaratory Judgment Act").

Resp."), ECF No. 24.  National Casualty argues that Va. Code § 38.2-2226 is procedural and therefore does not apply to this case.  Nat'l Casualty Mot. Dismiss at 3–5.

The parties also disagree about what analysis the Court should apply to resolve the dispute.  National Casualty insists that the *Erie* doctrine applies and because Va. Code § 38.2-2226 is procedural, this Court should not apply it.  *See id.*  ACI and Mr. Solomon argue that Va. Code § 38.2-2226 is built into the Policy by both operation of Virginia law and by the terms of the Policy itself.  *See* ACI's Mem. at 6 (citing *Maxey v. American Cas. Co.*, 23 S.E.2d 221, 223 (Va. 1942) ("A pertinent statute is as much a part of the contract as if it were incorporated in it.  The general rule is that laws in existence are necessarily referred to in all contracts made under such law." (internal quotations omitted))); Solomon Resp. at 7 (citing Policy at 20 ("Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes.")).  Mr. Solomon maintains that a choice of law analysis also settles the matter.  *See* Solomon Resp. at 5–9.  Furthermore, Mr. Solomon puts forth an argument that Va. Code § 38.2-2226 is substantive because it creates for ACI a legally enforceable claim against National Casualty that would not have existed otherwise.  *See* Solomon's Resp. to Nat'l Casualty's Opp'n to ACI's Mot. Partial Summ. J. at 10–11 ("Solomon Resp. to Nat'l Casualty's Opp'n), ECF No. 31.  In the Court's view, no party puts forth a complete and correct analysis.

In *Erie R. Co. v. Tompkins*, the Supreme Court declared that "[t]here is no federal general common law" and that, when sitting in diversity, "the law to be applied in any case is the law of the state."  304 U.S. 64, 78 (1938).  "The 'broad command of *Erie*,' of course, is that 'federal courts are to apply state substantive law and federal procedural law' when sitting pursuant to their diversity jurisdiction."  *Burke v. Air Serv Intern., Inc.*, 685 F.3d 1102, 1107 (D.C. Cir.

2012) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). As the Supreme Court has observed, however, "[c]lassification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Because of this, where no federal rule or statute controls—such as in this case—courts "must apply state law if it is 'outcome-determinative' in the relevant sense." *Burke*, 685 F.3d at 1108 (quoting *Hanna*, 380 U.S. at 468). This determination is made by asking whether "the failure to enforce state law 'would disserve the so-called twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 n.6 (1988)). If failing to enforce the state law would encourage forum-shopping or create inequity in the administration of the laws, *Erie* and its progeny require the state law to be applied. *See id.* at 1108–09.

      Before turning to the twin aims of *Erie*, the Court notes another layer of complexity. This Court must apply the law of the District of Columbia when sitting pursuant to its diversity jurisdiction. *See Burke*, 685 F.3d at 1105. All parties agree that under a D.C. choice of law analysis, Virginia substantive law applies in this case. *See* Nat'l Casualty Opp'n at 3 ("National Casualty does not oppose the idea that substantive law of Virginia applies to the substantive coverage issues concerning the policies."); ACI's Mem. at 6; Solomon's Resp. at 2 ("Mr. Solomon agrees with ACI that Virginia law governs the dispute."). Outside of the *Erie* context, D.C. law also addresses the enigmatic substantive or procedural distinction. "Under District of Columbia choice-of-law rules, procedures of the forum normally apply." *Parker v. K & L Gates, LLP*, 76 A.3d 859, 869 (D.C. 2013). The Court need not, however, delve into D.C. case law analyzing the distinction because "in some circumstances . . . a foreign jurisdiction may enforce procedural provisions of a different jurisdiction if a contract explicitly provides that another set

9

of procedures shall govern." *Id.* n.14.  In *Conteh v. Allstate Ins. Co.*, the court found that because "the Virginia statute and its attendant obligations were expressly incorporated into the insurance policy, we need not address appellant's characterization of [the statute] as creating a merely procedural duty." 782 A.2d 748, 752 (D.C. 2001).  The Court is confident that under the express terms of the contract, which incorporate Virginia law, *see* Policy at 20 ("Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes."), the D.C. Court of Appeals would apply Va. Code § 38.2-2226 to this case even if it was merely procedural.  Be that as it may, *Erie*, which controls here, does not ask whether D.C. law should apply instead of Virginia law; instead, *Erie* asks whether federal law should apply instead of state law.  The relevant state substantive law, under D.C. choice of law principles, is Virginia law.

The Court finds that the twin aims of *Erie* require application of Va. Code § 38.2-2226 in this case.  First, failing to enforce Va. Code § 38.2-2226 would encourage forum-shopping.  If federal courts ignored Va. Code § 38.2-2226, the same case could have drastically different results depending on which forum presided over the lawsuit.  Insurers in Virginia would be encouraged to file for declaratory judgment in federal court, after the expiration of the forty-five-day notice period.  Insurers would seek to avoid state court.  Without the notice rights of Va. Code § 38.2-2226 recognized in this case, ACI, as the claimant, would have no case against National Casualty in federal court even though it would have a claim in Virginia state court.  *See Dan River, Inc. v. Commercial Union Ins. Co.*, 317 S.E.2d 485, 488 (Va. 1984) (explaining the purpose of the statute is to protect the claimant); *see also Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 226 (4th Cir. 1999) (explaining that § 38.2–2226 applies when a claimant unable to collect a judgment from an insured party sues an insurer directly under Va. Code §

38.2–2200). The Court also agrees with Mr. Solomon that Va. Code § 38.2-2226 creates a right to notice for the claimant where no right exists under the contract[5] or common law. *See* Solomon Resp. to Nat'l Casualty's Opp'n at 10.

Second, failing to enforce Va. Code § 38.2-2226 would create inequity in administration of the law. As noted above, the terms of the Policy indicate that National Casualty agreed to be bound by Virginia law, whether substantive or procedural. *See* Policy at 20 ("Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes."). National Casualty does not engage at all with this contention. Refusing to hold National Casualty to this agreement simply because the matter is before a federal court in another state would not be fair or equitable. Moreover, Virginia case law interpreting Va. Code § 38.2-2226 indicates it is aimed at addressing the potential inequity caused by an insurer's failure to provide a claimant notice of defenses. *See Liberty Mut. Ins. Co. v. Safeco Ins. Co. of Am.*, 288 S.E.2d 469, 474 (Va. 1982) (finding that the purpose of a prior version of Va. Code § 38.2-2226 "is to require a liability insurer that intends to rely on a breach of the terms and conditions of the policy contract . . . to furnish prompt notice of such intention to the claimant or his attorney so that steps may be taken by the claimant, a stranger to the insurance contract, to protect his rights"); *Dan River*, 317 S.E.2d at 488; *Great Am. Ins. Co. v. Gross*, No. 3:05–0159, 2008 WL 376263, at *11 (E.D. Va. Feb. 11, 2008) ("[Section] 38.2–2226 serves to protect claimants, who are strangers to the contract, and not the insured"). While Va. Code § 38.2-2226 certainly contains a procedural element (the forty-five-day notice period), the substantive inequity created by refusing to apply it here (virtually no chance of collecting

---

[5] The Court notes, however, that the terms of this contract in particular do incorporate by reference Virginia law. *See* Policy at 20 ("Any part of this policy which is in conflict with the statutes of the state in which this policy is issued is amended to conform to such statutes.").

11

judgment if won) suggests it should apply. *See Gasperini*, 518 U.S. at 416 ("[A]lthough [the statute] contains a procedural instruction . . . the State's objective is manifestly substantive."). Considering the twin aims of *Erie*, the Court finds that Va. Code § 38.2-2226 should apply in this case.

The cases cited by National Casualty do not require the opposite result. In *Fed. Ins. Co. v. Nationwide Mut. Ins. Co.*, the federal court in Virginia conducted a choice of law analysis to determine whether the law where the accident occurred should apply (Virginia) or the law where the contract was made (Tennessee). 448 F. Supp. 723 at 724–25 (W.D. Va. 1978).[6] Without any analysis of the difference between substance and procedure, the court stated that "[t]he public policy of Virginia as set forth in [the statute] is clearly procedural and the court so holds." *Id.* at 725. The court did not mention *Erie* or conduct an analysis of the twin aims of *Erie*. Moreover, some of the court's language suggests that the statute is more substantive than procedural. *See id.* at 726 ("Virginia, through this statute, has manifested a legitimate interest in safeguarding the *rights* of persons injured within her boundaries." (emphasis added)). The Court does not find that this case requires any particular result with respect to its *Erie* analysis and whether application of the statute is "'outcome-determinative' in the relevant sense." *Burke*, 685 F.3d at 1108 (quoting *Hanna*, 380 U.S. at 468). The second case cited by National Casualty to show that the statute is procedural merely relies on *Federal Insurance* and offers no further analysis.

---

[6] National Casualty also suggests that *Federal Insurance* stands for the proposition that Va. Code § 38.2-2226 only applies when the injury occurs in Virginia. Nat'l Casualty Opp'n at 4–5. The Court disagrees. This argument appears to stem from confusion regarding the difference between an *Erie* analysis and choice of law analysis. *Federal Insurance*, while not particularly clear, applied Virginia law after a choice of law analysis. 448 F. Supp. at 725. National Casualty agrees that Virginia substantive law should apply to the case at hand. *See* Nat'l Casualty Opp'n at 3. If Virginia substantive law applies and Va. Code § 38.2-2226 is substantive, it would not matter that the injury did not occur in Virginia.

*See MHM Servs., Inc. v. Assurance Co. of Am.*, 975 N.E.2d 1139, 1163 (Ill. App. 2012) (citing *Fed. Ins.*, 448 F. Supp. at 725).

The D.C. Circuit's opinion in *Chi. Ins. Co. v. Paulson & Nace, PLLC* lends support to the Court's conclusion. 783 F.3d 897 (D.C. Cir. 2015). There, the court found that the district court below correctly conducted a choice of law analysis and determined "that District of Columbia law governed this contract between the D.C.-based law firm and Illinois-based insurer." *Id.* at 902. The court did not state that Va. Code § 38.2-2226 is procedural or that it would never apply in a federal court. Indeed, by framing the problem as a choice of law issue, the court implicitly acknowledged that Va. Code § 38.2-2226 is substantive and could apply to a case in federal court if the choice of law analysis pointed to Virginia substantive law. *See id.* at 902–03. The court did not provide any guidance for an *Erie* analysis of this statute.

Accordingly, the Court finds that the twin aims of *Erie* support application of Va. Code § 38.2-2226 to this case and therefore, based on the undisputed fact that timely notice was not provided as required by the statute, any judgment entered in favor of ACI against Mr. Solomon in the Underlying Lawsuit may be enforced by ACI or its assigns against National Casualty, notwithstanding any breach of contract by Mr. Solomon. The Court grants ACI's motion for partial summary judgment and denies National Casualty's motion to dismiss.

### IV.  MOTION FOR SANCTIONS

#### A.  Legal Standard

Under Rule 11, an attorney "presenting to the court a pleading, written motion, or other paper . . . certifies that" the filing "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). Furthermore, an attorney must certify that "the claims, defenses, and other legal

13

contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Id.* Rule 11 is a "prophylactic measure[] to protect the court from frivolous and baseless filings that are not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings." *Cobell v. Norton*, 157 F. Supp. 2d 82, 86 n.8 (D.D.C. 2001) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990); *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899 (D.C. Cir. 1998)). "The Court has discretion to decide whether a Rule 11 violation has occurred and what sanctions should be imposed if there has been violation." *Long v. Dep't of Justice*, 207 F.R.D. 4, 6 (D.D.C. 2002) (citing *Cooter*, 496 U.S. at 403–05; *Rafferty v. NYNEX Corp.*, 60 F.3d 844, 851–52 (D.C. Cir. 1995)). "Courts do not impose Rule 11 sanctions lightly; such sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings." *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 241 (D.D.C. 2017) (citing *Henok v. Chase Home Fin., LLC*, 926 F. Supp. 2d 100, 104 (D.D.C. 2013)).

## B. Analysis

The Court will not impose sanctions in this case. As noted above, the Court finds that no party, including ACI, put forth a complete and correct analysis of this complicated legal issue. The intersection of the *Erie* and choice of law doctrines presents myriad complicating factors—the Court does not find that any argument put forth by National Casualty was made in bad faith or without legal support such that sanctions must be imposed. While the Court rules in ACI's favor with respect to the motion for partial summary judgment and motion to dismiss, the Court does not find National Casualty's position to be so devoid of reason as to be deemed frivolous. Accordingly, ACI's motion for sanctions is denied.

## V.  CONCLUSION

For the foregoing reasons, ACI's motion for partial summary judgment (ECF No. 20), as amended (ECF No. 26), is **GRANTED** and National Casualty's motion to dismiss (ECF No. 30) is **DENIED**.  ACI's motion for sanctions (ECF No. 37) is **DENIED**.  Mr. Solomon's motion to dismiss (ECF No. 9) is **DENIED AS MOOT**; ACI's motion to withdraw (ECF No. 18) is **GRANTED**; and ACI's motion for leave to file (ECF No. 35) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 24, 2020                                                           RUDOLPH CONTRERAS
                                                                                                          United States District Judge